UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MARY MURPHY | CIVIL ACTION |
|---|---|
| VERSUS | NO: 18-9805 |
| LELAND J. FALCON, IN HIS OFFICIAL CAPACITY AS ASSUMPTION PARISH SHERIFF, ET AL. | SECTION: T(2) |

## ORDER

Before the Court are two motions for summary judgment. Mary Murphy ("Plaintiff") has filed a Motion for Summary Judgment on Liability[1] and a reply memorandum.[2] Leland J. Falcon, in his official capacity as Sheriff of Assumption Parish ("Sheriff Falcon") and Roland Rodrigue, in his official capacity as Warden of Assumption Parish Prison ("Warden Rodrigue") (collectively "Defendants") filed an opposition to Plaintiff's motion[3] and have also filed a Motion for Summary Judgment.[4] Plaintiff has filed an opposition.[5] For the following reasons, Plaintiff's Motion for Summary Judgment on Liability[6] is **DENIED.** Defendants' Motion for Summary Judgment[7] is **GRANTED IN PART**.

## FACTUAL AND PROCEDURAL BACKGROUND

This action involves Plaintiff's claim that her son, Mr. Edward Murphy, died because he was not administered his medication, clopidogrel, while in the Assumption Parish Jail.[8] Plaintiff

---

[1] R. Doc. 34.
[2] R. Doc. 77.
[3] R. Doc. 62.
[4] R. Doc. 52.
[5] R. Doc. 57.
[6] R. Doc. 34.
[7] R. Doc. 52.
[8] R. Doc. 1.

1

brings claims under 42 U.S.C. § 1983[9] and under Louisiana state law.[10] In addition to Sheriff Falcon and Warden Rodrigue, Plaintiff has named defendants Francine Mabile ("Nurse Mabile"), in her official capacity as Head Medical Official of Assumption Parish Detention Center and in her individual capacity, and Sergeant Brittney Wiggins ("Sergeant Wiggins"), in her official capacity as an employee of Assumption Parish Detention Center and her individual capacity.[11]

On February 3, 2018 at approximately 3:52 p.m., Mr. Murphy was stopped by Louisiana State Police Trooper Blake Poincon for having an expired motor vehicle inspection sticker.[12] Trooper Poincon smelled alcohol on Mr. Murphy's breath and gave Mr. Murphy a field sobriety test.[13] Mr. Murphy failed the test and was arrested.[14] Trooper Poincon was notified that Mr. Murphy was on several medications,[15] including clopidogrel to be taken daily.[16] Trooper Poincon stopped by Mr. Murphy's house to obtain his medications on the way to the jail.[17] Mr. Murphy was booked in the Assumption Parish Jail by Sergeant Wiggins.[18]

Mr. Murphy gave Sergeant Wiggins a bag containing his medications.[19] Mr. Murphy's niece called Sergeant Wiggins and provided a list of Mr. Murphy's medical issues.[20] Sergeant Wiggins made a list of the medical issues and called the jail nurse, Nurse Mabile, to advise her of Mr. Murphy's medications.[21] Sergeant Wiggins also took a photograph of the medications and

---

[9] R. Doc. 1, p.8.
[10] La. C.C. arts. 2315 and 2316; La. C.C. arts. 2320 and 2324; La. C.C. art. 2315.2; and La. C.C. art. 2315.1. *See* R. Doc. 1.
[11] R. Doc. 17.
[12] R. Doc. 52-6 at 10:1.
[13] R. Doc. 52-6 at 10:12-21.
[14] R. Doc. 52-6 at 10:24-11:2.
[15] R. Doc. 52-6 at 11:18-20.
[16] R. Doc. 34-5.
[17] R. Doc. 52-6 at 12:1-11.
[18] R. Doc. 52-7, 24:12-13.
[19] R. Doc. 52-7, 30:10-25.
[20] R. Doc. 52-7, 25:21-26:3.
[21] R. Doc. 52-7, 26:3-7.

sent the photograph to Nurse Mabile.[22] Nurse Mabile testified she looked at the photograph and told Sergeant Wiggins to give Mr. Murphy isosorbide, lisinopril, and clopidogrel in accordance with the instructions on the labels.[23]

Mr. Murphy was taken to a holding cell and given some medication.[24] Sergeant Wiggins could not recall which medication she administered or how many pills she gave Mr. Murphy.[25] Sergeant Wiggins did not watch to see if Mr. Murphy actually took the medication given to him.[26] Sergeant Wiggins checked on Mr. Murphy periodically throughout her shift, and Mr. Murphy did not have any complaints.[27] Sergeant Wiggins testified her shift ended at 5:39 a.m. on February 4, 2018.[28] Defendants represent that Mr. Murphy was found non-responsive in his cell on February 4, 2018 at approximately 6:25 a.m. by Sergeant Paula Dumas.[29] Sergeant Paula Dumas and other correctional officers allegedly gave Mr. Murphy CPR until an ambulance arrived.[30] Mr. Murphy was allegedly resuscitated and transported to Thibodeaux Regional Hospital alive,[31] and later died at the hospital.

On October 22, 2018, Plaintiff initiated this action alleging Mr. Murphy's Eighth Amendment Constitutional rights were violated by inadequate medical care because Mr. Murphy was not administered his clopidogrel heart medication.[32] Plaintiff now moves for summary judgment on the issue of liability contending medical causation is undisputed.[33] Defendants also

---

[22] R. Doc. 52-7, 26:7-9.
[23] R. Doc. 57-8, 27:1-16.
[24] R. Doc. 52-7, 26:9-20.
[25] R. Doc. 52-7, 36:9-12.
[26] R. Doc. 52-7, 37:23-24.
[27] R. Doc. 57-8, 39:3-18.
[28] R. Doc. 57-10.
[29] R. Doc. 57-2, p.3.
[30] R. Doc. 57-2, p.3.
[31] R. Doc. 57-2, p.3.
[32] R. Doc. 17.
[33] R. Doc. 34-1.

move for summary judgment contending Plaintiff cannot show deliberate indifference to Mr. Murphy's medical needs,[34] any constitutional deprivation motivated by official policies,[35] or that Mr. Murphy was not afforded adequate medical care.[36]

## LAW AND ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[37] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[38] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[39] The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.[40] "Once the movant does so, the burden shifts to the nonmovant to establish an issue of fact that warrants trial."[41]

### B. Standard for § 1983 Claims Based on Allegedly Inadequate Medical Care

42 U.S.C. § 1983 creates a private right of action for violations of federally-secured rights under color of state law. To establish Section 1983 liability, the plaintiff must satisfy three

---

[34] R. Doc. 52-1, p.1.
[35] R. Doc. 52-1, p.1.
[36] R. Doc. 52-1, p.1.
[37] Fed. R. Civ. P. 56(a).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).
[39] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).
[41] *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 420 n.4 (5th Cir. 2016).

4

elements: (1) deprivation of a right secured by the U.S. Constitution or federal law, (2) that occurred under color of state law, and (3) was caused by a state actor.[42] Although the parties dispute whether the applicable constitutional amendment is the Eight Amendment or the Fourteenth Amendment,[43] the distinction is immaterial in this case. In *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647 (5th Cir.1996), the Fifth Circuit explained that a pretrial detainee's episodic act or omission claim, such as Plaintiff's claim in this case, must meet the deliberate indifference standard enunciated in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Estelle*, the Supreme Court held that plaintiff may succeed on an inadequate medical care claim under 42 U.S.C. § 1983 only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors.[44]

### C. Plaintiff's Motion for Summary Judgment on Liability

Plaintiff moves for summary judgment on the issue of liability asserting medical causation is uncontested.[45] Plaintiff contends it is undisputed that Mr. Murphy was prescribed 75mg of clopidogrel daily,[46] and that the policies of Assumption Parish Jail require inmates be administered medication.[47] Plaintiff further claims medical causation is uncontested because Dr. Royce Dean Yount attested Mr. Murphy's death was most likely caused by nonadherence to clopidogrel therapy.[48] Finally, Plaintiff asserts it is undisputed that Sergeant Wiggins did not give Mr. Murphy his clopidogrel.[49]

---

[42] *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004)(*citation omitted*).
[43] R. Doc. 52-1, p.5.
[44] *Estelle,* 429 U.S. at 104.
[45] R. Doc. 34-1, p.4.
[46] R. Doc. 34-1, p.3.
[47] R. Doc. 34-1, p.4.
[48] R. Doc. 34-6, ¶¶11-12.
[49] R. Doc. 34-1, p.5.

Defendants' opposition to Plaintiff's motion for summary judgment adopts and incorporates the Motion for Summary Judgment filed by Defendants.[50] Defendants assert medical causation is disputed because Defendants' medical expert attests, "if a patient taking clopidogrel stops the drug abruptly, it takes seven days to recover complete platelet function."[51] Additionally, Defendants claim that all involved with the arrest and detention of Mr. Murphy took extraordinary measures to see to it that he received his medications.[52]

The Court finds that there are disputed material facts precluding summary judgment on the issue of liability. The competent summary judgment evidence does not establish whether Mr. Murphy was administered his clopidogrel. Sergeant Wiggins testified that she administered some medication to Mr. Murphy but did not specify which medication was administered.[53] In response to being asked how many pills she administered, Sergeant Wiggins testified: "It was one, I believe. I'm not too sure."[54] As Plaintiff acknowledges, "[t]here is no way to know for certain what medication, if any was administered."[55] Additionally, the testimony by the parties' medical experts shows that it is disputed whether missing a dose clopidogrel caused Mr. Murphy's death. Because there are disputed facts regarding whether Mr. Murphy missed a required dose of clopidogrel and whether a missed dose caused Mr. Murphy's death, summary judgment is not appropriate on the issue of liability.

### D. Defendants' Motion for Summary Judgment

Defendants assert Plaintiff's claim for denial of medical care fails as a matter of law because no prison official acted with deliberate indifference or caused Mr. Murphy's death.[56]

---

[50] R. Doc. 62, p.1.
[51] R. Doc. 62, p.4.
[52] R. Doc. 62-1, p.11.
[53] R. Doc. 52-7, 36:9-12.
[54] R. Doc. 52-7, 36:9-12.
[55] R. Doc. 57, p.11.
[56] R. Doc. 52-1, p.1.

6

Defendants also contend Plaintiff has failed to show that any alleged constitutional deprivation was motivated by official policy so as to subject Sherriff Falcon and Warden Rodrigue to liability under federal law in their official capacities.[57] Finally, Defendants claim Plaintiff's state law claims fail because Mr. Murphy was afforded adequate and reasonable medical care.[58]

      **i.   Deliberate Indifference and Culpable State of Mind**

Defendants contend summary judgment is appropriate because Plaintiff cannot show that any prison official possessed a culpable state of mind.[59] To show deliberate indifference to serious medical needs by prison officials, a plaintiff must show that the prison official had a sufficiently culpable state of mind.[60] In the § 1983 medical care context, a showing of deliberate indifference to serious medical needs requires the plaintiff prove that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."[61] "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."[62]

The Court finds that there is no competent summary judgment evidence showing that any prison official possessed a culpable state of mind. There is no evidence suggesting Defendants refused to treat Mr. Murphy, ignored Mr. Murphy's complaints, or intentionally treated Mr. Murphy incorrectly. Instead, the evidence shows that Sergeant Wiggins and Nurse Mabile attempted to ascertain what medication Mr. Murphy needed and attempted to administer the

---

[57] R. Doc. 52-1, p.1.
[58] R. Doc. 52-1, p.1.
[59] R. Doc. 52-1, p.7.
[60] *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994) (*citations and internal quotation marks omitted*).
[61] *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (*quoting Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).
[62] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

medication properly. Sergeant Wiggins testified that she made a list of Mr. Murphy's medical issues, sought assistance from Nurse Mabile regarding what medication to administer,[63] and that she administered medication to Mr. Murphy.[64] Nurse Mabile testified that she told Sergeant Wiggins to give Mr. Murphy isosorbide, lisinopril, and clopidogrel in accordance with the instructions on the labels.[65] The undisputed facts show that no prison official had a subjective intent to cause harm to Mr. Murphy, and Defendants are, therefore, entitled to judgment as a matter of law.

### ii. Constitutional Deprivation Motivated by Official Policy

Plaintiff asserts claims against Sheriff Falcon and Warden Rodrigue in their official capacities.[66] "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent."[67] Accordingly, an official-capacity claim against Sheriff Falcon and Warden Rodrigue would in reality be a claim against the local governmental body itself. However, as the United States Fifth Circuit Court of Appeals has explained:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.[68]

---

[63] R. Doc. 52-7, 26:3-7.
[64] R. Doc. 52-7, 26:9-20.
[65] R. Doc. 57-8, 27:1-16.
[66] R. Doc. 1.
[67] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 466 (5th Cir.1999).
[68] *Spiller v. City of Texas City, Police Department*, 130 F.3d 162, 167 (5th Cir. 1997) (*quotation marks, brackets, and citations omitted*).

8

Further, a plaintiff must identify the policy or custom that allegedly caused the deprivation of his constitutional rights.[69]

In the instant case, Plaintiff does not allege that Mr. Murphy's constitutional rights were violated as a result of a policy or custom. Instead, Plaintiff alleges that Assumption Parish Detention center had official policies that were not properly followed.[70] Specifically, Plaintiff asserts Defendants are liable in their official capacities because "the flagrant disregard of those policies resulted in a violation of the constitutional right to medical care."[71] Because Plaintiff's claims against Sheriff Falcon and Warden Rodrigue in their official capacities are based on a violation of a policy, rather than an unconstitutional deprivation motivated by an existing policy, Plaintiff has failed to state a proper official-capacity claim against either Sheriff Falcon or Warden Rodrigue.

### iii. State Law Claims

Defendants briefly address Plaintiff's negligence claim under La. C.C. arts. 2315 and 2316 by contending the Plaintiff cannot show breach of a duty to provide Mr. Murphy access to adequate and reasonable medical care.[72] Defendant does not address Plaintiff's claims under La. C.C. arts. 2315.1 or 2315.2. Plaintiff's opposition asserts that Defendants breached the duty to administer Mr. Murphy his necessary clopidogrel.[73]

Plaintiff's state law claims are before this Court as a matter of supplemental jurisdiction. The dismissal of Plaintiff's federal law claims in accordance with this Order leave only the pendent state law claims before the Court. As a result, the Court finds that these claims should be dismissed

---

[69] *See, e.g., Murray v. Town of Mansura*, 76 Fed. App'x 547, 549 (5th Cir. 2003); *Treece v. Louisiana*, 74 Fed. App'x 315, 316 (5th Cir. 2003).
[70] R. Doc. 57, pp.7-11.
[71] R. Doc. 57, p.19.
[72] R. Doc. 52-1, pp.13-14.
[73] R. Doc. 57, p.21.

under 28 U.S.C. § 1367(c), without prejudice, because all the federal claims over which this Court has original jurisdiction will be dismissed as a result of this order.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment on Liability (R. Doc. 34) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (R. Doc. 52) is **GRANTED IN PART.** Plaintiff's claims under 42 U.S.C. § 1983 are **DISMISSED WITH PREJUDICE.** Plaintiff's state law claims are hereby **DISMISSED WITHOUT PREJUDICE** pursuant to the Court's authority under 28 U.S.C. § 1367(c).

**New Orleans, Louisiana**, on this __8th__ day of October, 2019.

_____
**GREG GERARD GUIDRY**
**UNITED STATES DISTRICT JUDGE**